# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

XORAN HOLDINGS LLC, and
XORAN TECHNOLOGIES LLC,

     Plaintiffs,

                                 Case No. 16-13703

v.                               HON. DENISE PAGE HOOD

DAVID LUICK and TUNGSTEN
MEDICAL NETWORK, LLC,

     Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT [#58]

## I.    INTRODUCTION

Plaintiffs filed this action seeking an order enjoining Defendants from using and disclosing Plaintiffs' trade secrets and confidential and proprietary information and competing against Plaintiffs. Plaintiffs assert Defendant David Luick ("Luick") has violated express contractual obligations he made pursuant to an employment agreement ("Employment Agreement") he executed as an employee of Plaintiff Xoran Technologies LLC ("Xoran"). Defendants counter that Plaintiffs have not identified any particular piece of information entitled to trade secret protection, nor have Plaintiffs demonstrated actual or threatened misappropriation of any trade secrets.

1

## II. BACKGROUND

From September 2011 through May 2016, Luick was employed by Xoran Technologies LLC as Director of Sales (he began his employment in 2007 as Project Manager). Xoran is a research and development company based in Ann Arbor, Michigan, that has developed, patented and marketed a line of small, specialized CT scanners and related products for the United States and international markets, particularly low-dose radiation, cone-beam based CT scanners for use in office and operating rooms. Dkt. No. 1, ¶¶10-11. As Director of Sales, Luick was required to sign the Employment Agreement as a condition of his employment, which he did on or about September 18, 2011. Dkt. No. 1, Ex. 1. The Employment Agreement signed by Luick sets forth the following relevant provisions:

### RECITALS

\* \* \* \* \*

B.      Xoran possesses Confidential Information (hereinafter defined in Paragraph 6) that is a valuable and unique assets of Xoran. In connection with Employee's employment, Employee holds, or will hold, a position that will provide Employee with access to and knowledge of Confidential Information of Xoran and of clients and customers of Xoran.

\* \* \* \* \*

6.      <u>Non-Disclosure of Information</u>. Employee acknowledges that much, if not all, of the material and information related to the products,

technology, software and hardware, techniques, and othr business affairs of Xoran and its affiliates, including without limitation, and and all Work Product (as defined in Paragraph 5.1 of this Agreement), discovered or created pursuant to this Agreement, and the business affairs and information of Xoran and its customers and clients (including but not limited to, any business plans, practices and procedures, pricing information, sales figures, profit or loss figures, information relating to clients, suppliers, sources of supply and customer lists, customer identity, pricing information, and business development plans), which have or will come into Employee's possession or knowledge in connection with Employee's performance under this Agreement, consists of confidential and proprietary data of Xoran and its affiliates (collectively, "Confidential Information"). . . . Employee further agrees not to make use of Confidential Information for Employee's own benefit, either during the term of Employee's employment with Xoran of [sic] after the termination of such employment. In the event of any breach of this confidentiality obligation by Employee, Employee acknowledges that Xoran would have no adequate remedy at law because the harm caused by such a breach would not be easily measured and compensated for in the form of damages. Accordingly, Employee hereby waives his/her right to contest any equitable relief sought by Xoran, other than Employee's right to contest the question of whether a breach has occurred. Employee hereby waives the requirement of any bond being posted as security for such equitable relief.

* * * * *

8.1 <u>Term of Non-Competition</u>. The "Term of Non-Competition" means the period beginning on the date of this Agreement and continuing for a period of twelve (12) consecutive, full calendar months following the termination of Employee's employment for any reason.

8.2 <u>Prohibited Activities</u>.

* * * * *

8.2.2 During the Term of Non-Competition, Employee will not

provide directly or indirectly, individually or as a principal, officer, director, employee, shareholder (other than a holder of fewer than 5% of the outstanding shares of a publicly-traded company), consultant, partner, joint venturer, agent, equity owner or in any other capacity whatsoever, a "Competing Service" to any entity regardless of whether it is a sole proprietorship or a corporation, partnership, business association, or other entity. The term "Competing Service" includes, but is not limited to, the design, development, sale, marketing, or distribution of the same or similar products and/or services that are provided by Xoran and its affiliates. If any portion of this Paragraph 8.2.2 is deemed unenforceable by a court of law or arbitrator, the parties' agreement restricting Employee's ability to provide Competing Services shall be enforced to the fullest extent allowed by applicable law.

8.2.3 During the Term of Non-Competition, Employee will not, directly or indirectly, individually or on behalf of or in connection with any other person, entity or organization: (a) cause, encourage, direct, solicit, induce or attempt to induce any person who is or has been employed or retained by Xoran to leave the employ or services of Xoran, or in any way interfere with the relationship between Xoran and any employee or consultant thereof; and/or (b) call on, solicit, have contact with, or service any customer, prospective customer, consultant, strategic partner, funding source, or other business relation of Xoran in order to (i) solicit business of the type provided by Xoran, (ii) induce or attempt to induce such person or entity to cease doing business with, or reduce the amount of business conducted with, Xoran, or (iii) in any way to interfere with the relationship between any such person or entity and Xoran.

8.3 <u>Remedies</u>. In addition to exercising any remedies for a breach of this Paragraph 8 available to Xoran at law or in equity, if during any calendar month within the Term of Non-Competition, Employee is not in compliance with the terms of this Paragraph 8, Xoran shall be entitled to seek compliance by Employee with the terms of this Paragraph 8 for an additional number of full, calendar months equal to the number of calendar months during which such noncompliance occurred. The "Term of Non-Competition" shall also include this additional period.

* * * * *

11.10 <u>Survival</u>.  Employee hereby acknowledges that the rights and obligations of Employee and Xoran under all subparagraphs of Paragraphs 5, 6, 7, 8, 9, and 11 of this Agreement shall survive the termination of this Agreement.  Employee acknowledges and agrees that: . . . (iv) Xoran will be entitled to enforce this Agreement through a temporary restraining order, an injunction and/or other equitable remedies in the event of a breach, in addition to any other remedies available to Xoran (including, without limitation, monetary damages), without the requirement for posting a bond or security for such injunctive relief; and (v) injunctive relief will not deprive Employee of an ability to earn a living because he/she is qualified for many positions which do not otherwise necessitate the breach of any provision of this Agreement.

*Id.*

In May 2016, Luick resigned.  The parties dispute whether he resigned voluntarily or involuntarily, as Defendants contend that Luick was fired, a termination that Defendants claim was the result of Luick reporting misconduct by Xoran's Chief Executive Officer, Miodrag Rakic, to Xoran's Human Resources administrator. Xoran later discovered that Plaintiff had filed incorporation papers for a new entity, Tungsten Medical Network, LLC ("Tungsten"), that Luick operated out of his home. Dkt. No. 1, Ex. 2.  When Xoran learned that Defendants might be using Confidential Information (as defined in Section 6 of the Employment Agreement) to compete with Xoran, Xoran tried to address the issue with Luick without resorting to litigation, including sending a letter from counsel reminding him of his obligations. Dkt. No. 11,

5

Ex. 3. Luick assured Xoran personnel that he was not using Confidential Information or competing with Xoran.

In September 2016, Xoran's President, Dr. David Sarment, saw Defendant Luick talking with representatives from Xoran's largest competitor at an industry conference. When Dr. Sarment approached Luick, Luick indicated that he was not competing with Xoran. Dkt. No. 11, Ex. 4 at ¶ 5. Luick stated that he had looked into other positions, but none of those options could "meet his salary expectations." *Id*. at ¶ 7.

On October 18, 2016, Plaintiffs filed a Complaint with the following five counts: (1) Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); (2) Injunctive Relief; (3) Misappropriation of Trade Secrets under the Michigan Uniform Trade Secrets Act, M.C.L. 445.1901 *et seq.*; (4) Breach of Contract (Luick only); and (5) Tortious Interference with a Contractual Relationship. Defendants filed an answer to the Complaint and Counterclaim on November 1, 2016. On November 1, 2016, Defendants filed a Counterclaim for wrongful termination against Plaintiffs.

Shortly after filing this action, Plaintiffs filed a Motion for Temporary Restraining Order and an Emergency Motion for Preliminary Injunction against Defendants. At the time Plaintiffs' filed their motion for temporary restraining order,

Tungsten's website indicated that it is "experienced with these brands" and displayed the names "Xoran," "Morita," and "Carestream," a competitor of Xoran's. Carestream is the same competitor that Dr. Sarment had seen Luick speaking with at the conference. Contrary to Plaintiffs' statements, there did not appear to be any other reference to Carestream on Tungsten's website (and not anything that stated Tungsten had a relationship with Carestream). Xoran also believed that Defendants were using a claimed (but nonexistent) business relationship with Xoran to get access to Xoran's customers and then attempt to steer those customers away from Xoran by providing false information about Xoran's business. Dkt. No. 11, Ex. 3 at ¶¶ 18-21.

Prior to the scheduled hearing, the parties entered into a Stipulated Order on November 4, 2016 ("Stipulated Order"). Dkt. No. 14. The Stipulated Order provided, in part, as follows:

> WHEREAS, The Employment Agreement contained certain non-compete provisions which are at issue in the current litigation, and which restricted Defendant Luick from certain activities Xoran for a period of 12 months from the date of termination ("non-compete period"); and

> * * * * *

> **IT IS HEREBY ORDERED AS FOLLOWS:**

> 1. Defendants will not use any work product derived in whole or in part from work product Luick or any other Xoran employee produced while working at Xoran unless otherwise publicly available.

2. With respect to this Order, Xoran Customer is defined as any specific location that currently has a Xoran product and/or limited or comprehensive service contract for the Xoran MiniCat, xCAT, XoranConnect, VetCAT, or CBCT Service Contract, or prospective customers that Luick was personally engaged in active sales discussions at the time of his termination.

3. Until the completion of the "non-compete period", Defendants will not (1) directly or indirectly initiate contact with any Xoran Customer; (2) offer to sell a competing product or service to any Xoran Customer, or assist or advise in any such transaction; (3) hold himself out as an agent of Xoran to any person; (4) take a position as an agent or executive of any Xoran competitor company, including but not limited to Carestream and Morita, in transactions involving Xoran Customers.

4. Defendants will not advertise a business affiliation with Xoran.

5. Defendants will not use, sell or otherwise disclose information about Xoran's product and service pricing that Luick learned while employed at Xoran, unless it is otherwise publicly available.

\* \* \* \* \*

Dkt. No. 14.

On November 18, 2016, Defendants filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction, which was denied. Plaintiffs filed a Motion to Dismiss Count II of Defendants' Counterclaim, which was granted. Plaintiffs filed an Amended Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt ("Motion for Order to Show Cause"), which was denied. In the Motion for Order to Show Cause, Plaintiffs asserted that Defendants ignored

the Stipulated Order by: (1) continuing to contact Xoran Customers (Charleston ENT and Southwest Allergy); (2) continuing to solicit Xoran Customers and market competitive products; (3) continuing to utilize Xoran product and service pricing in order to compete with Xoran; and (4) continuing to utilize Xoran work product. The Court found no violation regarding Charleston ENT. The Court concluded that Defendants appeared to be in violation of at least the intent of the Stipulated Order, but the Court held that "without more, . . . the Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt is denied."

In the present Motion for Partial Summary Judgment, Defendants argue that Plaintiffs should be precluded from seeking to, pursuant to Section 8.3 of the Employment Agreement (the "Option Provision") or for equitable reasons: (a) extend the twelve-month period of non-competition beyond May 6, 2017; or (b) add on any additional period of non-competition.

## III.  ANALYSIS

### A.  Novation

Defendants first argue that the Stipulated Order novated the Employment Agreement, such that the "non-compete period" or "12 months from the date of termination" of David Luick is the period of non-competition upon which the parties have agreed. The Court is not persuaded.

A novation is the substitution of a new obligation for an old one, which is extinguished. *Archambo v. Lawyers Title Ins. Corp.*, 646 N.W.2d 170 (2002). A novation simply requires "(1) parties capable of contracting; (2) a valid obligation to be displaced; (3) consent of all parties to the substitution based upon sufficient consideration; and (4) the extinction of the old obligation and the creation of a valid new one." *In re Dissolution of Yeager Bridge & Culvert Co.*, 150 Mich.App. 386, 410 (1986).

Section 11.7 of the Employment Agreement provides that, "Amendments to any section of this Agreement shall not be effective unless agreed to in writing signed by the parties." As Plaintiffs argue, the Stipulated Order did not provide that the parties were amending the Employment Agreement. To the contrary, the Stipulated Order expressly states that "the parties have agreed to resolve Plaintiffs' requests for an injunction, only[.]" [Dkt. No. 14, PgID 397 at ¶ 6]

Accordingly, the Court concludes that the Stipulated Order did not novate the Employment Agreement in its entirety or any part of it, including Section 8.

## B.    Waiver of Right to Extend or Add to Non-Compete Period

"A party may waive any contractual rights . . ." and waiver "may be express or implied." *Nexteer Auto. Corp. v. Mando Am. Corp.*, 314 Mich.App. 391, 395 (2017).

While an express waiver requires "an affirmative expression of assent," *id.* at 395 (citation omitted), an implied waiver requires (1) "a failure to timely assert a right . . . [, 2] coupled with an inconsistent course of conduct[,]" and (3) "prejudice resulting from the inconsistent acts." *Id*. at 397 (internal quotations and citations omitted). Defendants contend that Plaintiffs: (a) expressly waived of the Option Provision when they executed the Stipulated Order; or (b) in the alternative, Plaintiffs' waiver was implied.

### 1. *Express Waiver*

For the same reasons the Stipulated Order did not constitute a novation, the Stipulated Order did not operate as an express waiver of the Option Provision. The Stipulated Order does not reference any amendment of the Employment Agreement or any part of Section 8 of the Employment Agreement. Even if Defendants are correct that Plaintiffs "failed to invoke [the Option Provision] or otherwise include its language or recite any option to extend, even though [Plaintiffs] were certainly aware of their own allegations that Defendants were competing in violation of the [Employment] Agreement," this does not constitute an express waiver. *See Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 365 (2003) ("Mere silence generally cannot constitute waiver"). An express waiver would require language that "show[s] an intent to plainly relinquish" the Option Provision. *Nexteer*,

314 Mich.App. at 396. There is no such language in the Stipulated Order.

## 2.    *Implied Waiver*

Defendants argue that Plaintiffs have failed to "seasonably" assert their right to the Option Provision in any of their filings. As Plaintiffs note, the Court is to assess whether the right has been asserted "timely," not "seasonably." The Court finds that Plaintiffs have not timely asserted the right to the Option Provision.

It is undisputed that Plaintiffs first indicated that they would assert their rights pursuant to Section 8.3 on March 22, 2018, when Plaintiffs' counsel communicated to Defendants' counsel that Plaintiffs would seek a new twelve-month non-compete period based on Defendants' violations of the original twelve-month non-compete period. Plaintiffs' counsel raised the issue with the Court a week later, on March 29, 2018, at a status conference before the Court. Until responding to Defendants' Motion for Partial Summary Judgment, Plaintiffs did not assert the right to the Option Provision in writing.

A review of Plaintiffs' filings reveals that, prior to filing their response brief, neither Section 8.3 of the Employment Agreement nor any other indication that Plaintiffs could seek to extend or add time to the non-compete period was mentioned in any of Plaintiffs' filings with the Court. Specifically, the Complaint, the Motion for Temporary Restraining Order, the Emergency Motion for Preliminary Injunction,

and the Motion for Order to Show Cause do not mention Section 8.3 or extending the Term of Non-Competition. The Court notes that Plaintiffs still have not moved the Court to extend (or add to) the Term of Non-Competition, even though the original twelve-month non-compete period expired over 15 months ago – and they orally asserted the right to a new non-compete period more than four months ago.

The Court finds inapposite the cases cited by Plaintiffs to support their desire that equitable tolling be awarded in this case. *See, e.g., Thermatool Corp. v. Borzym*, 227 Mich. App. 366, 375 (1998) (an extension of non-compete period is permissible in "cases where a party has flouted the terms of the noncompetition agreement"); *Superior Consultant Co., Inc. v. Bailey*, Case No. 00-CV-73439, 2000 WL 1279161, at *12 (E.D. Mich. Aug. 22, 2000) (Steeh, J.) (citing *Thermatool*, 227 Mich.App. at 375) ("A court may, in appropriate circumstances, extend injunctive relief beyond the term of a non-competition agreement where a party has 'flouted the terms' of the agreement," but the court declined to extend the non-compete period after finding that the plaintiff made no showing of a breach of the agreement); *Telma Retarder, Inc. v. Balish*, Case No. 2:17-CV-11378, 2017 WL 3276468, at *5 (E.D. Mich. Aug. 2, 2017) (Murphy, J.) (citing *Superior Consultant*, 2000 WL 1279161, at *12) ("Since [defendant's] conduct constituted a 'flouting' of the agreement, the Court will 'extend injunctive relief beyond the term of [his] non-competition agreement.'").

In *Thermatool*, the court held that an extension was not warranted where the "plaintiffs have alleged a single breach of the noncompetition agreement." *Thermatool*, 227 Mich. App. at 377. The court recognized that extensions of non-compete periods had been awarded when "the breach has consisted of continuous and systematic activity in violation of the agreement." *Id.* at 378. The Court also notes that: (1) the *Thermatool* court was deciding the issue of whether the non-compete period should be extended after the plaintiffs specifically "requested a preliminary injunction extending the noncompetition agreement for a period equal to the time that [defendant] violated the agreement," *id.* at 371; and (2) the *Thermatool* plaintiffs filed the preliminary injunction motion on the heels of filing their complaint, such that the hearing was held within three weeks – and the trial court's ruling was made within five weeks – of the complaint being filed. *Id.* at 371-72.

In *Superior Consultant*, the plaintiff filed its complaint and a motion for preliminary injunction on May 12, 2000, as well as a motion for temporary restraining order on May 15, 2000. The plaintiff's complaint alleged that the defendant former employee was competing with the plaintiff in violation of his employment agreement prohibiting him from competing with the plaintiff for six months from the date of his resignation, which was February 28, 2000. *Superior Consultant*, 2000 WL 1279161, at *1-2. In part, the motions for injunctive relief sought to prohibit the defendant

former employee from competing against the plaintiff, and in the motion for preliminary injunction, the plaintiff asked the court to enjoin the defendant former employee from competing for six months. *Id.* at **1-2.   The motion for temporary restraining order was granted on May 25, 2000, a hearing on the motion for preliminary injunction was held on July 6, 2000, and a ruling on the motion for preliminary injunction was issued on August 22, 2000. *Id.* at **1-2.

In *Telma Retarder*, the plaintiff filed its complaint and a motion for preliminary injunction on April 28, 2017, seeking to enjoin the individual former employee defendant from competing in violation of his employment agreement, including beyond the term of the non-competition agreement. *See* Case No. 17-11378, Dkt. No. 2, PgID 48-49 (the plaintiff's motion for preliminary injunction).   The former employee defendant had resigned on May 1, 2016 and was subject to a 12-month non-compete, which he violated when he went to work for the plaintiff's direct competitor and "to expand its share of the U.S. market" in the retarder industry. at *5.  A hearing was held on June 13, 2017, and the Court's order was issued on August 2, 2017.

In each of those cases cited by Plaintiffs, the plaintiff(s) took prompt action to challenge the alleged wrongful competition by a former employee.  As set forth above, each of those courts was presented with one or more motions for injunctive relief that: (a) sought an extension of the applicable non-compete period; (b) at the time of or

shortly after the complaint was filed and prior to the expiration of the non-compete period provided for in the underlying agreement; (c) such that the trial court determined whether the non-compete period would be extended during the original non-compete period or shortly after its expiration. *See Thermatool* (hearing held during non-compete period and ruling issued six weeks after the non-compete period expired); *Superior Consulting* (hearing held and ruling issued during the non-compete period); *Telma Retarder* (hearing held six weeks after non-compete period expired and ruling issued three months after the period expired).[1]

In the present case, Plaintiffs have failed to take prompt – or any action – to extend the Term of Non-Competition. Even though Section 8.3 of the Employment Agreement expressly provides that the Term of Non-Competition could be extended if Luick violated the Term of Non-Competition, Plaintiffs did not request – and still has not moved for – an extension of the Term of Non-Competition in any filing made

---

[1]Plaintiffs separately cited *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 2008 WL 2218427 (E.D. Mich. May 27, 2008), for the proposition that tolling of the non-compete period is an option where a non-competition provision allegedly is being violated. In that case, like the other cases cited by Plaintiffs, the plaintiff filed a motion for preliminary injunction promptly after the complaint was filed. After the trial court denied the preliminary injunction, the issue was appealed and the Sixth Circuit remanded the case with instructions to issue the requested preliminary injunction, which the trial court did. The parties then filed cross-motions for partial summary judgment approximately 15 months into the applicable 24-month non-compete provision, with the plaintiffs requesting in its motion for partial summary judgment that the court extend the non-compete period based on the defendants' violation of the non-compete provision over that 15-month period. Similar to the other cases cited by Plaintiffs, the issue of whether to extend the non-compete period was presented to the *Tenke* court for consideration during the non-compete period set forth in the agreement.

in this case. Plaintiffs also did not raise the issue to the Court until a status conference held on March 29, 2018, nearly a year (more than 10 months) after the Term of Non-Competition expired.

As Defendants have noted, Plaintiffs have known or should have known since December 5, 2016 (the date Plaintiffs filed the Motion for Order to Show Cause) that Defendants intended to begin competing with Plaintiffs in May 2017. Some of Defendants' conduct about which Plaintiffs have suggested constituted wrongful competition by Defendants (specifically, the emails sent by Luick to Southwest Allergy that Tungsten would not offer any services until May 2017) unambiguously evidences that Defendants intended to provide services that competed with Xoran, starting in May 2017. Defendants' representations and Plaintiffs' response brief reflect that Defendants began competing in May 2017. Plaintiffs have not disputed that they did not even raise with Defendants the issue of adding to the non-compete period until March 22, 2017, over 10 months after the conduct about which they complain began. As of the date of this Order, more than 15 months have elapsed since the agreed upon 12-month Term of Non-Competition expired, and Plaintiffs have not taken action to challenge the allegedly competitive behavior.

The Court finds Plaintiffs' inaction significant because the Term of Non-Competition can only be extended if Plaintiffs take action. As Section 8.3 of the

Employment Agreement states, " if during any calendar month within the Term of Non-Competition, Employee is not in compliance, Plaintiffs shall be entitled to seek compliance by [Luick] with the terms of this Paragraph 8 for additional number of full calendar months equal to the number of calendar months during which such noncompliance occurred." As discussed above, Plaintiffs have not sought compliance by Defendants since December 2017 and have never asked the Court to extend the Term of Non-Competition.

For the foregoing reasons, the Court holds that there was an implied waiver by Plaintiffs of their rights to seek an extension of the Term of Non-Competition pursuant to Section 8.3 of the Employment Agreement (or in equity). The Court finds that Plaintiffs "fail[ed] to timely assert a right" under the Employment Agreement, specifically the right to seek an extension of the Term of Non-Competition pursuant to Section 8.3. *Nexteer*, 314 Mich.App. at 397. The Court concludes that Plaintiffs failure to seek an extension of the Term of Non-Competition – or even mention such an extension as a form of relief Plaintiffs were seeking in any pleading prior to their response to the instant Motion – demonstrates "an inconsistent course of conduct." *Id.* Even if Plaintiffs were, at times, negotiating with Defendants to resolve this matter, Plaintiffs have not asserted that, after May 7, 2017 and prior to March 22, 2017, Plaintiffs: (a) expressed to Defendants that Plaintiffs were opposed to Defendants

operating their business in competition with Plaintiffs after May 7, 2017; or (b) believed that Defendants were in violation of the non-compete in the Employment Agreement when Defendants began operating their business in competition with Plaintiffs after May 7, 2017.

The Court agrees with Defendants that allowing Plaintiffs to seek to extend the Term of Non-Competition at this junction would cause Defendants "prejudice resulting from the inconsistent acts."  Defendants began conducting their business in competition with Plaintiffs – at the latest – in May 2017.  Defendants operated their business openly for more than 10 months before Plaintiffs suggested that they could, and would, ask the Court to impose additional months to the Term of Non-Competition.  Defendants also represent that they have actively been seeking to grow their business.  As Defendants argue, by commencing their business and operating it for the last 15 months, if Plaintiffs are now permitted to seek additional months where Defendants are barred from competing with Plaintiffs, Defendants have only increased their liability by competing with Plaintiffs for those 15 months and will suffer great losses if they have to shut down their operations for an additional period.

Had Plaintiffs asserted their rights pursuant to Section 8.3, Plaintiffs may have prevented Defendants from commencing their operations in May 2017 – or at least put Defendants on notice that Defendants were commencing their operations at the risk

of being shut down. Instead, if Plaintiffs are allowed to pursue a Court order adding to the Term of Non-Competition at this time, Defendants would be suffering that unforeseeable consequence simply because Plaintiffs failed to timely assert their rights. That is different from any competition Defendants undertook during the Term of Non-Competition that expired on May 6, 2017, which Defendants should have foreseen would result in Plaintiffs seeking relief from the Court pursuant to Section 8. The Court finds that Defendants would be unfairly prejudiced if Plaintiffs could add a new period of non-competition at this point.

Accordingly, the Court concludes that the Term of Non-Competition set forth in the Employment Agreement was in effect from May 7, 2016 to May 6, 2017, and the Term of Non-Competition will not be extended, nor will any new non-compete period be added. Defendants' Motion for Partial Summary Judgment is granted.

IV.     **CONCLUSION**

Accordingly,

IT IS ORDERED that Defendants' Motion for Partial Summary Judgment **[Dkt. No. 58]** is **GRANTED**.

IT IS ORDERED.

Dated: February 15, 2019

s/Denise Page Hood
DENISE PAGE HOOD
CHIEF JUDGE, U.S. DISTRICT COURT