# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

XORAN HOLDINGS LLC, and
XORAN TECHNOLOGIES LLC,

      Plaintiffs,

                                    Case No. 16-13703

v.                                  HON. DENISE PAGE HOOD

DAVID LUICK and TUNGSTEN
MEDICAL NETWORK, LLC,

      Defendants.

_____/

## ORDER RE: VARIOUS MOTIONS

## I. INTRODUCTION

Plaintiffs filed this action seeking an order enjoining Defendants from using and disclosing Plaintiffs' trade secrets and confidential and proprietary information and competing against Plaintiffs. Plaintiffs assert Defendant David Luick ("Luick") violated express contractual obligations he made pursuant to an employment agreement ("Employment Agreement") he executed as an employee of Plaintiff Xoran Technologies LLC ("Xoran"). Defendants counter that Plaintiffs have not identified any particular piece of information entitled to trade secret protection, nor have Plaintiffs demonstrated actual or threatened misappropriation of any trade secrets.

Currently before the Court are the following matters:

A. Plaintiffs' Objections to the Magistrate Judge's November 16, 2018 Bench Order to produce certain documents and supplemental interrogatory responses. Dkt. No. 106.

B. Motion to Extend Discovery, filed by Defendants. Dkt. No. 113.

C. Motion to Stay Dkt. No. 102 Pending Ruling on Dkt. Nos. 106 and 108, filed by Plaintiffs. Dkt. No. 119.

D. Motion to Adjourn All Remaining Dates, filed by Defendants. Dkt. No. 138.

E. Motion for Partial Summary Judgment Regarding Competition, filed by Plaintiffs. Dkt. No. 141.

F. Motion for Relief per Federal Rule of Civil Procedure 56(d), filed by Plaintiffs. Dkt. No. 152.

G. Motion for Reconsideration of Order Granting Defendants' Motion for Partial Summary Judgment, Dkt. No. 158, filed by Plaintiffs. Dkt. No. 164.

H. Objections to the Magistrate Judge's May 19, 2019 Order, Dkt. No. 175, filed by Defendants. Dkt. No. 177.

To the extent permissible, each of the foregoing filings has been fully briefed.

## II. BACKGROUND

From September 2011 through May 2016, Luick was employed by Xoran Technologies LLC as Director of Sales (he began his employment in 2007 as Project Manager). Xoran is a research and development company based in Ann Arbor, Michigan, that has developed, patented and marketed a line of small, specialized CT

scanners and related products for the United States and international markets, particularly low-dose radiation, cone-beam based CT scanners for use in office and operating rooms. Dkt. No. 1, ¶¶10-11. As Director of Sales, Luick was required to sign the Employment Agreement as a condition of his employment, which he did on or about September 18, 2011. Dkt. No. 1, Ex. 1. The Employment Agreement signed by Luick sets forth the following relevant provisions:

## RECITALS

* * * * *

B.  Xoran possesses Confidential Information (hereinafter defined in Paragraph 6) that is a valuable and unique assets of Xoran. In connection with Employee's employment, Employee holds, or will hold, a position that will provide Employee with access to and knowledge of Confidential Information of Xoran and of clients and customers of Xoran.

* * * * *

6.  <u>Non-Disclosure of Information</u>.  Employee acknowledges that much, if not all, of the material and information related to the products, technology, software and hardware, techniques, and othr business affairs of Xoran and its affiliates, including without limitation, and and all Work Product (as defined in Paragraph 5.1 of this Agreement), discovered or created pursuant to this Agreement, and the business affairs and information of Xoran and its customers and clients (including but not limited to, any business plans, practices and procedures, pricing information, sales figures, profit or loss figures, information relating to clients, suppliers, sources of supply and customer lists, customer identity, pricing information, and business development plans), which

have or will come into Employee's possession or knowledge in connection with Employee's performance under this Agreement, consists of confidential and proprietary data of Xoran and its affiliates (collectively, "Confidential Information"). . . . Employee further agrees not to make use of Confidential Information for Employee's own benefit, either during the term of Employee's employment with Xoran of [sic] after the termination of such employment. In the event of any breach of this confidentiality obligation by Employee, Employee acknowledges that Xoran would have no adequate remedy at law because the harm caused by such a breach would not be easily measured and compensated for in the form of damages. Accordingly, Employee hereby waives his/her right to contest any equitable relief sought by Xoran, other than Employee's right to contest the question of whether a breach has occurred. Employee hereby waives the requirement of any bond being posted as security for such equitable relief.

* * * * *

8.1     <u>Term of Non-Competition</u>. The "Term of Non-Competition" means the period beginning on the date of this Agreement and continuing for a period of twelve (12) consecutive, full calendar months following the termination of Employee's employment for any reason.

8.2    <u>Prohibited Activities</u>.

* * * * *

8.2.2 During the Term of Non-Competition, Employee will not provide directly or indirectly, individually or as a principal, officer, director, employee, shareholder (other than a holder of fewer than 5% of the outstanding shares of a publicly-traded company), consultant, partner, joint venturer, agent, equity owner or in any other capacity whatsoever, a "Competing Service" to any entity regardless of whether it is a sole proprietorship or a corporation, partnership, business association, or other entity. The term "Competing Service" includes, but is not limited to, the design, development, sale, marketing, or distribution

of the same or similar products and/or services that are provided by Xoran and its affiliates. If any portion of this Paragraph 8.2.2 is deemed unenforceable by a court of law or arbitrator, the parties' agreement restricting Employee's ability to provide Competing Services shall be enforced to the fullest extent allowed by applicable law.

8.2.3 During the Term of Non-Competition, Employee will not, directly or indirectly, individually or on behalf of or in connection with any other person, entity or organization: (a) cause, encourage, direct, solicit, induce or attempt to induce any person who is or has been employed or retained by Xoran to leave the employ or services of Xoran, or in any way interfere with the relationship between Xoran and any employee or consultant thereof; and/or (b) call on, solicit, have contact with, or service any customer, prospective customer, consultant, strategic partner, funding source, or other business relation of Xoran in order to (i) solicit business of the type provided by Xoran, (ii) induce or attempt to induce such person or entity to cease doing business with, or reduce the amount of business conducted with, Xoran, or (iii) in any way to interfere with the relationship between any such person or entity and Xoran.

8.3 <u>Remedies</u>. In addition to exercising any remedies for a breach of this Paragraph 8 available to Xoran at law or in equity, if during any calendar month within the Term of Non-Competition, Employee is not in compliance with the terms of this Paragraph 8, Xoran shall be entitled to seek compliance by Employee with the terms of this Paragraph 8 for an additional number of full, calendar months equal to the number of calendar months during which such noncompliance occurred. The "Term of Non-Competition" shall also include this additional period.

* * * * *

11.10 <u>Survival</u>. Employee hereby acknowledges that the rights and obligations of Employee and Xoran under all subparagraphs of Paragraphs 5, 6, 7, 8, 9, and 11 of this Agreement shall survive the termination of this Agreement. Employee acknowledges and agrees that: . . . (iv) Xoran will be entitled to enforce this Agreement through a

temporary restraining order, an injunction and/or other equitable remedies in the event of a breach, in addition to any other remedies available to Xoran (including, without limitation, monetary damages), without the requirement for posting a bond or security for such injunctive relief; and (v) injunctive relief will not deprive Employee of an ability to earn a living because he/she is qualified for many positions which do not otherwise necessitate the breach of any provision of this Agreement.

*Id.*

According to Plaintiffs, Luick resigned from Xoran in May 2016. Defendants contend that Luick was wrongfully fired in May 2016, a termination that Defendants claim was the result of Luick reporting misconduct by Xoran's Chief Executive Officer, Miodrag Rakic, to Xoran's Human Resources administrator. Xoran later discovered that Plaintiff had filed incorporation papers on June 29, 2016 for a new entity, Tungsten Medical Network, LLC ("Tungsten"), that Luick operated out of his home. Dkt. No. 1, Ex. 2. When Xoran learned that Defendants might be using Confidential Information (as defined in Section 6 of the Employment Agreement) to compete with Xoran, Xoran tried to address the issue with Luick without resorting to litigation, including sending a letter from counsel reminding him of his obligations. Dkt. No. 11, Ex. 3. Luick assured Xoran personnel that he was not using Confidential Information or competing with Xoran.

In September 2016, Xoran's President, Dr. David Sarment, saw Defendant

Luick talking with representatives from Xoran's largest competitor at an industry conference. When Dr. Sarment approached Luick, Luick indicated that he was not competing with Xoran. Dkt. No. 11, Ex. 4 at ¶ 5. Luick stated that he had looked into other positions, but none of those options could "meet his salary expectations." *Id*. at ¶ 7.

On October 18, 2016, Plaintiffs filed a Complaint with the following five counts: (1) Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); (2) Injunctive Relief; (3) Misappropriation of Trade Secrets under the Michigan Uniform Trade Secrets Act, M.C.L. 445.1901 *et seq.*; (4) Breach of Contract (Luick only); and (5) Tortious Interference with a Contractual Relationship. Defendants filed an answer to the Complaint and Counterclaim on November 1, 2016. On November 1, 2016, Defendants filed a Counterclaim for wrongful termination against Plaintiffs.

Shortly after filing this action, Plaintiffs filed a Motion for Temporary Restraining Order and an Emergency Motion for Preliminary Injunction against Defendants. At the time Plaintiffs' filed their motion for temporary restraining order, Tungsten's website indicated that it is "experienced with these brands" and displayed the names "Xoran," "Morita," and "Carestream," a competitor of Xoran's. Carestream is the same competitor that Dr. Sarment had seen Luick speaking with at the

conference.  Contrary to Plaintiffs' statements, there did not appear to be any other reference to Carestream on Tungsten's website (and not anything that stated Tungsten had a relationship with Carestream).  Xoran also believed that Defendants were using a claimed (but nonexistent) business relationship with Xoran to get access to Xoran's customers and then attempt to steer those customers away from Xoran by providing false information about Xoran's business. Dkt. No. 11, Ex. 3 at ¶¶ 18-21.

Prior to the scheduled hearing, the parties entered into a Stipulated Order on November 4, 2016 ("Stipulated Order"). Dkt. No. 14.  The Stipulated Order provided, in part, as follows:

> WHEREAS, The Employment Agreement contained certain non-compete provisions which are at issue in the current litigation, and which restricted Defendant Luick from certain activities Xoran for a period of 12 months from the date of termination ("non-compete period"); and

* * * * *

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.  Defendants will not use any work product derived in whole or in part from work product Luick or any other Xoran employee produced while working at Xoran unless otherwise publicly available.

2.  With respect to this Order, Xoran Customer is defined as any specific location that currently has a Xoran product and/or limited or comprehensive service contract for the Xoran MiniCat, xCAT, XoranConnect, VetCAT, or CBCT Service Contract, or prospective

customers that Luick was personally engaged in active sales discussions at the time of his termination.

3. Until the completion of the "non-compete period", Defendants will not (1) directly or indirectly initiate contact with any Xoran Customer; (2) offer to sell a competing product or service to any Xoran Customer, or assist or advise in any such transaction; (3) hold himself out as an agent of Xoran to any person; (4) take a position as an agent or executive of any Xoran competitor company, including but not limited to Carestream and Morita, in transactions involving Xoran Customers.

4. Defendants will not advertise a business affiliation with Xoran.

5. Defendants will not use, sell or otherwise disclose information about Xoran's product and service pricing that Luick learned while employed at Xoran, unless it is otherwise publicly available.

* * * * *

Dkt. No. 14.

On November 18, 2016, Defendants filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction, which was denied. Plaintiffs filed a Motion to Dismiss Count II of Defendants' Counterclaim (wrongful termination), which was granted. Plaintiffs filed an Amended Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt ("Motion for Order to Show Cause"), which was denied. In the Motion for Order to Show Cause, Plaintiffs asserted that Defendants ignored the Stipulated Order by: (1) continuing to contact Xoran Customers (Charleston ENT and Southwest Allergy); (2) continuing to solicit

Xoran Customers and market competitive products; (3) continuing to utilize Xoran product and service pricing in order to compete with Xoran; and (4) continuing to utilize Xoran work product. The Court found no violation regarding Charleston ENT. The Court concluded that Defendants appeared to be in violation of at least the intent of the Stipulated Order, but the Court held that "without more, . . . the Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt is denied."

On June 25, 2018, Defendants filed a Motion for Partial Summary Judgment Dkt. No. 58. In an Order dated February 15, 2019, Dkt. No. 158, the Court held that the Term of Non-Competition set forth in the Employment Agreement was in effect from May 7, 2016 to May 6, 2017, and the Term of Non-Competition would not be extended, nor would any new non-compete period be added.

## III.   ANALYSIS

### A.   Plaintiffs' Objections to the Magistrate Judge's November 16, 2018 Bench Order to produce certain documents and supplemental interrogatory responses. Dkt. No. 106.

Plaintiffs object to the Magistrate Judge's November 16, 2018 Bench Order, pursuant to which she ordered Plaintiffs to produce certain documents and supplemental interrogatory responses, Dkt. No. 102, because the "materials include[d] competitively sensitive and confidential information, and [could] not be adequately protected under the current Protective Order." Dkt. No. 106, PgID 3273.

One week after filing the Objections, Plaintiffs filed a Motion to Amend the Protective Order (Dkt. No. 108), which appears to address the same confidentiality issues as set forth in the Objections. The Motion to Amend Protective Order was referred to Magistrate Judge Davis, and on May 19, 2019, Magistrate Judge Davis issued an Order (Dkt. No. 175) granting in part and denying in part Plaintiffs' Motion to Amend the Protective Order (Dkt. No. 108). Defendants filed Objections to Magistrate Judge Davis' May 19, 2019 Order, which the Court addresses below.

The Court has reviewed: (1) Plaintiffs' Objections to Magistrate Judge Davis' November 16, 2018 Bench Order; (2) Plaintiffs' Motion to Amend the Protective Order; (3) Magistrate Judge Davis' May 19, 2019 Order regarding the Motion to Amend the Protective Order; and (4) Defendants' Objections to Magistrate Judge Davis' May 19, 2019 Order. The Court finds that Magistrate Judge Davis' May 19, 2019 Order addressed the issues raised by Plaintiffs' Objections and concludes that it is no longer necessary for the Court to resolve the issues raised in Plaintiffs' Objections. Accordingly, Plaintiffs' Objections to the Magistrate Judge's November 16, 2018 Bench Order [Dkt. No. 106] are denied as moot.

**B.      Motion to Extend Discovery, filed by Defendants. Dkt. No. 113.**

Defendants claim that Plaintiffs have not complied with orders to produce discovery and have not produced certain witnesses for deposition. It is undisputed

that there is some outstanding discovery that Plaintiffs have not been produced. Most of the motions upon which Defendants rely to argue need to be resolved to complete discovery have been addressed, if not resolved: (a) Defendants' motion for sanctions, Dkt. No. 83, was denied; (b) its motion to exclude supplementation or alteration of 30(b)(6) testimony, Dkt. No. 101, was granted; (c) a motion to compel a third set of written discovery, Dkt. No. 112, seemingly has been resolved (Defendants granted access to Laura Dennis materials); (d) Defendants' motion to strike witnesses, Dkt. No. 111, was denied; (e) Plaintiffs' motion to amend the protective order, Dkt. No. 108, was taken under advisement on March 7, 2019, and decided on May 19, 2019; and (f) the Court has addressed Defendants' objections to the Magistrate Judge's May 19, 2019 Order (*see* Section III.H. below).

Plaintiffs claim that Defendants have not been deprived of discovery because the "only documents that [Defendants do] not have are financial and business records which contain sensitive customer and business data. The records are ready for production, but [Defendants'] counsel has not inspected them because they have refused <u>reasonable protections against unwarranted disclosure and cancelled appointments to view the documents</u>."[1] Dkt. No. 122, PgID 4058. Defendants state

---

[1] Plaintiffs' demands for reasonable protections included:

[1.]    The inspection will be conducted by an attorney for Luick and Tungsten. The attorney may take handwritten notes. The attorney may not reproduce any

that they conditionally agreed to those conditions (even if they disagreed) as long as

Plaintiffs agreed not to use Defendants' agreement as a basis to avoid their discovery

obligations, but Plaintiffs would not agree. Defendants contend they need an

extension of discovery to engage in meaningful discovery.

The Court grants Defendants' Motion to Extend Discovery because, as

discussed above, they have not received all of the discovery to which they are entitled.

Discovery shall be extended as follows:

---

document, take any photographs or recordings, or take typed notes.

[2.] For any documents designated CONFIDENTIAL OR ATTORNEYS EYES ONLY, no information contained in the documents will be disclosed to your clients or to any non-party to the litigation and arbitration or publicly filed or otherwise publicly disclosed except as provided below.

[3.] Notes taken during the inspection may be shared with other attorneys or staff of your firm to the extent necessary for them to assist in the adjudication of Xoran's objections to the magistrate's order and motion to amend protective order. Such attorneys or staff shall be bound by all requirements herein.

[4.] If Defendants' counsel intends to file or to discuss the contents of any documents designated CONFIDENTIAL or ATTORNEYS EYES ONLY in a court hearing or conference (other than general characterizations that do not disclose the confidential contents of such documents), Defendants'| counsel must notify Xoran's counsel in advance of such intent. Unless Xoran agrees in writing that such contents may be publicly filed or discussed in a public proceeding, Xoran shall have ten days from the date of notice to file a motion to maintain such contents under seal. Defendants' counsel shall not file or discuss such contents in a court hearing or conference or otherwise disclose them until the Court rules on such motion to seal or otherwise enters a binding ruling addressing the protection to be afforded such contents, and, after such ruling is entered, Defendants shall only file, discuss, or disclose such contents in a manner consistent with the Court's ruling. Nothing herein shall preclude the use of any document or information at trial under conditions to be determined by the Court or Arbitrator upon notice to and opportunity to be heard by the parties.

Dkt. No. 127, Ex. 3 at PgID 4389.

(A) Plaintiffs shall produce to Defendants all required discovery no later than 28 days after the date of this Order; and

(B) the depositions of Jacqueline Vestevich and William Van Kampen shall be conducted no later than 14 days from the date of this Order.

**C. Motion to Stay Dkt. No. 102 Pending Ruling on Dkt. Nos. 106 and 108, filed by Plaintiffs. Dkt. No. 119.**

Plaintiffs' Motion to Stay asks the Court stay the Magistrate Judge's November 16, 2018 Bench Order (Dkt. No. 102) pending the resolution of their Objections to that ruling (Dkt. No. 106) and the Motion to Amend Protective Order (Dkt. No. 108) that was pending before the Magistrate Judge. The Magistrate Judge decided Dkt. No. 108 (Motion to Amend Protective Order) on May 19, 2019, and the Court has denied as moot Dkt. No. 106 (Appeal of the Bench Order). Finally, as set forth in Section III.H. below, the Court has resolved Defendants' June 3, 2019 Objections to the Magistrate Judge's May 19, 2019 Order, to which Plaintiffs responded. (Dkt. Nos. 177, 178) Accordingly, Plaintiffs' Motion to Stay is denied as moot.

**D. Motion to Adjourn All Remaining Dates, filed by Defendants. Dkt. No. 138.**

Defendants filed a Motion to Adjourn dates based on the need for more discovery. The Court has extended the discovery period as set forth in Section III.B, and the parties shall have until November 4, 2019 to file dispositive motions. Accordingly, the Motion to Adjourn All Remaining Dates is granted. New Final

Pretrial Conference and Trial dates will be established by the Court upon resolution

of any new dispositive motions filed with the Court or, in the absence, of any such

dispositive motions, shortly after November 4, 2019.

**E.     Motion for Partial Summary Judgment Regarding Competition, filed by Plaintiffs. Dkt. No. 141.**

Plaintiffs argue that they are entitled to summary judgment on the issue of

whether Luick competed with Plaintiffs during the Term of Non-Competition, in

violation of Paragraph 8 of the Employment Agreement.  In their sole responsive brief

to Plaintiffs' Motion for Partial Summary Judgment, Defendants moved for relief

pursuant to Rule 56(d).  Defendants ask the Court to deny without prejudice or delay

consideration of Plaintiffs' motion until discovery is complete.

Plaintiffs' Motion for Partial Summary Judgment is limited to the issue of

whether Luick violated the Term of Non-Competition provision of the Employment

Agreement.  The Court has only been asked to decide whether Luick (Defendants)

is/are liable for violating the Term of Non-Competition, and Plaintiffs' Motion for

Partial Summary Judgment does not seek a determination of the amount of damages

to which Plaintiffs allegedly are entitled as a result of inappropriate competition.

Plaintiffs are correct that, in Defendants' Motion for Relief (their only

"response" to Plaintiffs' Motion for Partial Summary Judgment), Defendants do not

argue that Plaintiffs have not had produced discovery on any of the inappropriately contacted persons or entities identified by Plaintiffs in the Motion for Partial Summary Judgment. Defendants primarily focus on a third-party who was not mentioned in Plaintiffs' Motion for Partial Summary Judgment (Dr. Richard Ruiz), for whom Defendants claim they have not obtained discovery. Defendants also argue generally that Plaintiffs consistently have not provided discovery requested by Defendants and discovery remains outstanding. As set forth above and discussed in other pending motions, it is undisputed that there is a sizeable quantity of relevant discovery that still has not been provided by Plaintiffs to Defendants (even though the reasons it has not been provided are hotly contested). Defendants also argue that Dr. Ruiz is significant to Plaintiffs' case because approximately 20% of the Plaintiffs' claimed damages relate to lost business with Dr. Ruiz.

The Court denies without prejudice Plaintiffs' Motion for Partial Summary Judgment. As the Sixth Circuit has recognized, the following factors should be considered when a party seeks relief pursuant to Rule 56(d):

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests. The overarching inquiry in these factors is whether the moving party was diligent in pursuing discovery.

*Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010) (citation

omitted).  Defendants have established that they have been diligent in pursuing

discovery throughout the litigation (with the exception of taking a couple of

depositions), they have not been dilatory, and Plaintiffs have not produced some

discovery requested (even when ordered by the Magistrate Judge).  And, it is probable

that some of the outstanding discovery is relevant to the issue set forth in Plaintiffs'

Motion for Partial Summary Judgment.

Accordingly, the Court finds that the interests of justice strongly favor

withholding consideration of the Motion for Partial Summary Judgment at this time.

The Court denies without prejudice the Motion for Partial Summary Judgment and

will permit Plaintiffs to refile the same motion, or a revised motion, for (partial)

summary judgment within the time set forth in Section III.D.

**F.      Motion for Relief per Federal Rule of Civil Procedure 56(d), filed by Defendants. Dkt. No. 152.**

Defendants move the Court to deny without prejudice – or delay consideration

– of Plaintiffs' Motion for Partial Summary Judgment.  For the reasons stated in

Section III.E., the Court grants Defendants' Motion for Relief.

**G.      Motion for Reconsideration of Order Granting Defendants' Motion for Partial Summary Judgment, Dkt. No. 158, filed by Plaintiffs. Dkt. No. 164.**

On February 15, 2019, the Court entered an Order Granting Defendants'

Motion for Partial Summary Judgment, holding that, on the basis of implied waiver:

> the Term of Non-Competition set forth in the Employment Agreement was in effect from May 7, 2016 to May 6, 2017, and the Term of Non-Competition will not be extended, nor will any new non-compete period be added.

Dkt. No. 158, PgID 4852. Plaintiffs filed a Motion for Reconsideration. Plaintiffs argue that the Order Granting Defendants' Motion for Partial Summary Judgment deprives them "of the contractual and equitable right to seek tolling of Luick's covenants not to compete and not to solicit, a right for which [Plaintiffs] bargained and paid, following a trial on the merits." Dkt. No. 164, PgID 5188.

In order to obtain reconsideration of a particular matter, the party bringing the motion for reconsideration must: (1) demonstrate a palpable defect by which the Court and the parties have been misled; and (2) demonstrate that "correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). *See also Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004); *Aetna Cas. and Sur. Co. v. Dow Chemical Co.*, 44 F.Supp.2d 865, 866 (E.D. Mich. 1999); *Kirkpatrick v. General Electric*, 969 F.Supp. 457, 459 (E.D. Mich. 1997).

A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest, or plain." *Olson v. The Home Depot*, 321 F.Supp.2d 872, 874 (E.D. Mich. 2004). The

movant must also demonstrate that the disposition of the case would be different if the palpable defect were cured. E.D. Mich. L.R. 7.1(h)(3). *Brown v. Walgreens Income Protective Plan for Store Managers*, No. 10-CV-14442, 2013 WL 1040530, at *1 (E.D. Mich. Mar. 15, 2013). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3).

Plaintiffs contend that the Court's implied waiver analysis involved two palpable defects: (1) neither the Employment Agreement nor Michigan law requires a party to file a motion seeking tolling during the restrictive covenant period or at any time before trial; and (2) Plaintiffs have the right to a jury trial on the merits before the Court decides Plaintiffs' entitlement to a permanent injunction tolling the restrictive period for up to twelve months. The Court is not persuaded by either argument, each of which constitutes little more than a disagreement with the Court's conclusion that there was an implied waiver in this case.

The Court first notes that, contrary to Plaintiffs' argument, the Court did <u>not</u> deprive Plaintiffs "of the contractual and equitable right to seek tolling of Luick's covenants not to compete and not to solicit, a right for which [Plaintiffs] bargained and paid, following a trial on the merits." Pursuant to Paragraph 8.3 of the Employment Agreement, Plaintiffs have held that right since the onset of this cause

of action. As the Court noted in the Order Granting Defendants' Motion for Partial

Summary Judgment, Plaintiffs simply failed to exercise that right:

> the Complaint, the Motion for Temporary Restraining Order, the
> Emergency Motion for Preliminary Injunction, and the Motion for Order
> to Show Cause do not mention Section 8.3 or extending the Term of
> Non-Competition. The Court notes that Plaintiffs still have not moved
> the Court to extend (or add to) the Term of Non-Competition, even
> though the original twelve-month non-compete period expired over 15
> months [prior to the hearing on Defendants' Motion for Partial Summary
> Judgment] – and they orally asserted the right to a new non-compete
> period more than three months [prior to that hearing].

Dkt. No. 158, PgID 4844-45.

As to Plaintiffs' first claim of a palpable defect, the Court agrees that nothing

in the Employment Agreement nor Michigan law <u>required</u> Plaintiffs to file a motion

seeking tolling during the restrictive covenant period or at any time during trial. But,

the very point of Defendants' Motion for Partial Summary Judgment was to ask the

Court to weigh the equities and exercise its discretion to find an implied waiver of the

right to toll, extend, or add to the Term of Non-Competition. Plaintiffs had the

opportunity to argue why an implied waiver should not have been found, and they

cited four cases for that proposition. The Court distinguished all four cases because,

as set forth in the Order Granting Defendants' Motion for Partial Summary Judgment,

the plaintiffs in each of those cases:

(a) sought an extension of the applicable non-compete period; (b) at the

time of or shortly after the complaint was filed and prior to the expiration of the non-compete period provided for in the underlying agreement; (c) such that the trial court determined whether the non-compete period would be extended during the original non-compete period or shortly after its expiration.

Dkt. No. 158, PgID 4847-48.

The Court also notes that Plaintiffs have offered no authority to support the proposition that the Court cannot find an implied waiver in this case prior to trial (or at any other time). Plaintiffs have not cited any new or different authority pertaining to implied waivers, and the three cases Plaintiffs cite for the proposition that the failure to seek a preliminary injunction does not foreclose obtaining a permanent injunction are inapposite.

Accordingly, the Court concludes that there was no palpable defect in finding an implied waiver by Plaintiffs, even though neither Michigan law nor the Employment Agreement mandated that Plaintiffs "file a motion seeking tolling during the restrictive covenant period or at any time before trial."

As to the second claimed palpable defect, the Court is not persuaded. Plaintiffs retain their right to a trial at which the factfinder will determine whether Luick violated the Term of Non-Competition, such that Plaintiffs may be entitled to a permanent injunction. Nothing in the Order Granting Defendants' Motion for Partial Summary Judgment compromises Plaintiffs' right to trial for those purposes.

Nowhere in Plaintiffs' Complaint, however, did Plaintiffs make a claim for relief or seek as a remedy the tolling of the Term of Non-Competition. Nor have Plaintiffs at any time moved the Court requesting such relief or to amend the pleadings to do so. As a result, the only Term of Non-Competition the factfinder can assess is the twelve-month period between May 7, 2016 and May 6, 2017. For those reasons, at no point during this case of action has the issue of tolling or extension of the Term of Non-Competition (or adding a new non-compete period) been an issue that could be submitted to the factfinder for consideration at trial. Accordingly, the Court declines Plaintiffs' invitation to find as a palpable defect the right to a trial on the merits before the Court decided that the Term of Non-Competition shall not be extended or tolled or that a new non-compete shall not be permitted.

In addition, even if there was a palpable defect, the disposition of the issue of tolling or extending the Term of Non-Competition would not be different. First, as noted above, Plaintiffs have never requested as relief or as a remedy the tolling or extension of the Term of Non-Competition or to add a new non-compete term. As such, that relief or remedy is not available to Plaintiffs. Second, for the same reasons set forth in the Order Granting Defendants' Motion for Partial Summary Judgment, the Court finds that, due to Plaintiffs' failure and/or delay in requesting as relief or a remedy the extension or tolling of the Term of Non-Competition and/or add any new

non-compete term, Plaintiffs are not entitled to such relief or remedy.

For the reasons set forth above, as the Court finds that Plaintiffs cannot satisfy either prong required for a successful motion for reconsideration. The Court denies Plaintiffs' Motion for Reconsideration.

**H.    Objections to the Magistrate Judge's May 19, 2019 Order, Dkt. No. 175, filed by Defendants. Dkt. No. 177.**

In the May 19, 2019 Order, Magistrate Judge Davis granted in part and denied in part Plaintiffs' Motion to Amend Protective Order. Defendants challenge two of Magistrate Judge Davis' conclusions. Defendants first ask the Court to vacate Magistrate Judge Davis' conclusion that "the parties may disclose confidential matters to deposition, trial or hearing witnesses only, except that a party may disclose such matters to potential witnesses upon consent of the opposing party or by order of the Court." ECF No. 175, PgID 5288. This conclusion modified the terms of Paragraph 4(h) of the Stipulated Protective Order approved on July 23, 2018 (*See* ECF Nos. 64, 109), which provided that a party also could disclose confidential information to potential witnesses without obtaining consent from the other party or by order of the Court. *Id.* at ¶ 4(h).

Defendants next object to Magistrate Judge Davis' conclusion that an identified subset of documents provided by Plaintiffs to Defendants in discovery are to be

designated as attorneys-eyes-only ("AEO"). Magistrate Judge Davis' ruling was different from her earlier finding that Plaintiffs had not their burden of justifying a protective order that included an AEO designation. *See* ECF No. 64, PgID 1507. As Magistrate Judge Davis explained in the May 19, 2019 Order:

> When previously presented with only Mr. Teicher's declaration, the Court found that Xoran had failed to carry its burden to demonstrate the need for AEO designation. Mr. Rakic's declaration provides greater granularity concerning the nature of the documents at issue, their competitive value and the efforts taken to maintain their confidentiality. Taken together with the recent developments in this case and the need to advance meaningful discovery in this matter, the Court is satisfied that plaintiff has met its burden to demonstrate the need for AEO designation for the items it has listed in Exhibit E (Dkt. 108-6) of its motion. Therefore, its motion to designate the identified subset of documents as AEO is GRANTED.

The standard of review for objections to a Magistrate Judge's order is well-established:

> Congress promulgated 28 U.S.C. § 636 to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates. *See Gomez v. United States,* 490 U.S. 858, 869–70, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (reviewing legislative history of § 636). Section 636(b) lists what powers may be assigned to magistrates from the district courts and outlines the applicable standard of review for objections made to magistrate rulings and findings on such assigned matters.
>
> * * * * *
>
> Thus, § 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall apply a "clearly erroneous or contrary to law" standard of review for the "nondispositive" preliminary measures of §

636(b)(1)(A). *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Conversely, "dispositive motions" excepted from § 636(b)(1)(A), such as motions for summary judgment or for the suppression of evidence, are governed by the de novo standard. *See id.* at 674, 100 S.Ct. 2406.

*United States v. Curtis*, 237 F.3d 598, 602-03 (6th Cir. 2001). As the pending objections are nondispositive, the Court employs a clearly erroneous or contrary to law standard of review. For the reasons that follow, the Court concludes that Magistrate Judge Davis' rulings were not clearly erroneous or contrary to law.

1.    *AEO Protection*

Defendants argue that Plaintiffs did not submit specific proof showing the need for the AEO protection. The Court disagrees, as the affidavit of the Xoran's CEO and a list of the documents, including a description of the types of information contained in the documents, the value of that information to Xoran, and the steps Xoran has taken to protect them, sufficiently demonstrate the need for AEO protection. This is especially true in this case, where Defendant Luick and defense counsel have, at a minimum, violated the spirit – if not the letter – of the Stipulated Protective Order and pushed the limits of what can be disclosed to non-party, non-witness individuals.

When arguing that Magistrate Judge Davis failed to review the documents proposed for AEO review, Defendants: (1) fail to note that Magistrate Judge Davis inquired about the nature and contents of those documents; (2) ignore that a purpose

of protective orders is "so that precious time and effort better spent on the merits of their claims and defenses is not wasted on protracted collateral litigation on whether individual documents are entitled to protection," *United States v. Bundy*, Case No. 2:16-cr-046-GMN-PAL, 2016 U.S. Dist. LEXIS 166626, at *17 (D. Nev. Nov. 30, 2016), and that Paragraph 9 of the Stipulated Protective Order entered in this case affords a procedure by which the confidentiality designation of a document can be challenged; and (3) do not cite any legal authority that requires that a magistrate judge has to review each or any documents designated as confidential or AEO.

Defendants' argument that it did not have an opportunity (or a meaningful opportunity) to respond to Plaintiffs' Motion to Amend Protective Order is not persuasive. Defendants acknowledge that Plaintiffs offered to let Defendants' counsel review the documents Plaintiffs sought to designate as AEO, though counsel would have been limited to taking handwritten notes of those documents. The Court does not find that limitation unreasonable because: (a) Plaintiffs sought to designate the documents as AEO because of concerns that Defendant Luick would use or share confidential, trade-secret information contained in them, so it made sense to not allow Defendants to review them; and (b) allowing Defendants' counsel to review the documents and take handwritten notes would allow Defendants' counsel an adequate basis upon which they could meaningfully challenge Plaintiffs' efforts to designate

those documents as AEO. As Defendants elected not to undertake any review, Defendants voluntarily chose not to respond to the Motion to Amend Protective Order with a knowledge of what was in the documents at issue.

Defendants next contend that the Magistrate Judge's May 19, 2019 Order is overbroad because it includes documents that are not subject to AEO protection – or are even confidential. Even if that is true, "[t]rade secret litigation . . . would be impossible if the plaintiff had to prove its entire case as a precondition for protection in discovery. . . . [And,] [o]ne purpose of a protective order is to establish a framework for the parties to exchange confidential information and to provide a method for the non-designating party to challenge the confidentiality designations." ECF No. 178, PgID 5368 (quoting *Technicare of Columbus, LLC v. Gatehouse Media Ohio Holdings II, Inc.*, No. 2:18-cv-298, 2019 U.S. Dist. LEXIS 72233, at *4 (S.D. Ohio Apr. 30, 2019)).

The Court also rejects Defendants' assertion that Magistrate Judge Davis' Order is improper because it permits Plaintiffs, at their discretion, to preclude Defendant Luick from assisting in the defense of Defendants' case. The Court finds that Defendants' overstate the limitations on Defendant Luick's participation in the defense of this case. There is a limited subset of documents that are designated as AEO that he cannot view or for which he would have to absent himself if they were

produced at a deposition, proceeding, or other matter where one (or more) of those documents were produced or discussed. The Court concludes that limitation is reasonable in a trade-secret litigation matter such as this one.

### 2. *Potential Witnesses*

Defendants claim that Magistrate Judge Davis erred when she limited disclosure of confidential information (and AEO) to potential witnesses. Defendants refer to a body of law that reflects that informal discovery and interviews of potential witnesses are time-honored principles, principles with which the Court agrees. Defendants do not, however, explain how or why Magistrate Judge Davis erred by: (a) limiting certain confidential and AEO information pursuant to a protective order; or (b) precluding *potential witnesses* from reviewing such confidential and AEO information. As Plaintiffs argue, the only case cited by Defendants for such a proposition does not actually address or permit the disclosure of protected confidential information to non-parties. *See Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004). The *Nemir* court simply concluded that the plaintiff had the right to contact customers for informal interviews, when those customers had already complained of seatbelt malfunctions to Mitsubishi. *Id.*

Defendants are correct in arguing that, absent consent of Plaintiffs, Defendants will have to get approval of the Court in order to share confidential information with

a potential witness. The fact remains, however, that Defendants have that avenue if they want to share information with a potential witness. And, there is nothing that precludes Defendants from interviewing a potential witness to determine if the potential witness is aware of an AEO or confidential document or its contents – as long as they do so without disclosing such a document or its contents prior to obtaining consent or leave of the Court to share the confidential information at issue.

### 3. *Conclusion*

For the reasons stated above, the Court concludes that Magistrate Judge Davis did not clearly err or make a finding contrary to law when she: (1) determined that Plaintiffs had established good cause to amend the original Stipulated Protective Order; (2) designated a subset of documents as AEO; and (3) held that "the parties may disclose confidential matters to deposition, trial or hearing witnesses only, except that a party may disclose such matters to potential witnesses upon consent of the opposing party or by order of the Court." Accordingly, the Court denies Defendants' Objections to Magistrate Judge Davis' May 19, 2019 Order.[2]

## IV. CONCLUSION

---

[2] The Court also rejects Defendants' suggestion that Plaintiffs should have sought remedies under the existing Stipulated Protective Order, and any objection to or request for reconsideration of the Stipulated Protective Order was untimely. The Court finds, however, that Paragraph 14 of the Stipulated Protective Order does not contain a time limitation for amending the Stipulated Protective Order and does not preclude a party from seeking to amend the Stipulated Protective Order. ECF No. 109, PgID 3473.

Accordingly, IT IS ORDERED that

A.    Plaintiffs' Objections to the Magistrate Judge's November 16, 2018 Bench Order [Dkt. No. 106] are DENIED.

B.    Plaintiff's Motion to Extend Discovery [Dkt. No. 113] is GRANTED.

C.    Motion to Stay Dkt. No. 102 Pending Ruling on Dkt. Nos. 106 and 108, filed by Plaintiffs [Dkt. No. 119], is DENIED.

D.    Motion to Adjourn All Remaining Dates, filed by Defendants [Dkt. No. 138], is GRANTED.

E.    Motion for Partial Summary Judgment Regarding Competition, filed by Plaintiffs [Dkt. No. 141], is DENIED WITHOUT PREJUDICE.

F.    Motion for Relief per Federal Rule of Civil Procedure 56(d), filed by Plaintiffs [Dkt. No. 152], is GRANTED.

G.    Motion for Reconsideration of Order Granting Defendants' Motion for Partial Summary Judgment, Dkt. No. 158, filed by Plaintiffs [Dkt. No. 164], is DENIED.

H.    Defendants' Objections to the Magistrate Judge's May 19, 2019 Order [Dkt. No. 177] are DENIED.

IT IS ORDERED.

s/Denise Page Hood

Dated: September 27, 2019    DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE